[Cite as *State v. Travick*, 2026-Ohio-3100.]

# IN THE OHIO COURT OF APPEALS
## FIFTH APPELLATE DISTRICT
## STARK COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 00128 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2025 CR 0746 |
| ANTON TRAVICK | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: August 11, 2026 |

**BEFORE:** Andrew J. King; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** KYLE L. STONE, CHRISTOPHER A. PIEKARSKI, for Plaintiff-Appellee; ANTHONY KOUKOUTAS, for Defendant-Appellant.

*King, P.J.*

{¶ 1}   Defendant-Appellant, Anton Travick, appeals his August 27, 2025 convictions following a bench trial in the Stark County Common Pleas Court.  Plaintiff-Appellee is State of Ohio.  We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   On April 29, 2025, the Stark County Grand Jury indicted Travick on one count of felonious assault in violation of R.C. 2903.11, one count of strangulation in violation of R.C. 2903.18, one count of domestic violence in violation of R.C. 2919.25, and one count of obstructing official business in violation of R.C. 2921.31.  Said charges arose from an incident between Travick and his live-in girlfriend.

{¶ 3}  A bench trial commenced on August 20, 2025.  By judgment entry filed August 27, 2025, the trial court found Travick guilty of strangulation and domestic violence and not guilty of felonious assault and obstructing official business.  The trial court sentenced Travick to thirty-six months on the strangulation count and forty-eight months on the domestic violence count, to be served concurrently.

{¶ 4}  Travick filed an appeal with the following assignments of error:

I

{¶ 5}  "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN CONVICTIONS AGAINST APPELLANT, AND THE CONVICTIONS MUST BE REVERSED."

II

{¶ 6}  "THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

I, II

{¶ 7}  In Travick's two assignments of error, he claims his convictions were against the sufficiency and manifest weight of the evidence.  We disagree.

{¶ 8}  On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks,* 61 Ohio St.3d 259 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979).

{¶ 9} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or trial court] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983). *See also State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 10} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418 (1997).

{¶ 11} Travick was convicted of strangulation in violation of R.C. 2903.18(B)(2) which states: "No person shall knowingly . . . [c]reate a substantial risk of serious physical harm to another by means of strangulation or suffocation." "Strangulation or suffocation" is defined as: "any act that impedes the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth." R.C. 2903.18(A)(1). "Substantial risk" means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 12} Travick was also convicted of domestic violence in violation of R.C. 2919.25(A) which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "Knowingly" is defined in R.C. 2901.22(B) as follows:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 13} "Physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). As stated by this court in *State v. Spade,* 2009-Ohio-2004, ¶ 26 (5th Dist.):

"Visible injury" is not the definition of "physical harm." Further, R.C. 2919.25 does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family member. *State v. Nielsen* (1990), 66 Ohio App.3d 609, 585 N.E.2d 906. "Attempt" occurs "when a person

knowingly engages in conduct that, if successful, would result in physical harm."  R.C. 2923.02.

*See also State v. Culbertson,* 2026-Ohio-333, ¶ 38 (5th Dist.), quoting *State v. Bailey,* 2023-Ohio-1267, ¶ 20 (5th Dist.) ("'The slightest injury is enough proof of physical harm'").

{¶ 14} During the bench trial, the trial court heard from the victim, two law enforcement officers, and Travick.

{¶ 15} At the time of the incident, the victim was 26 years old and Travick was 45.  T. at 88, 196-197.  The victim testified Travick was angry with her because she was going to be evicted from her apartment for inadvertently "stealing" a neighbor's package and he would then be homeless (they resided together after his release from jail).  T. at 17, 19, 23-24, 81-82, 84-85.  The two argued; at the time, the victim was in a wheelchair due to a leg injury.  T. at 25-26.  She is also a diabetic and frequently needs to drink and urinate.  T. at 27, 30.  The victim testified she propped herself up by the kitchen sink to get a drink of water when Travick "comes at me and wraps his hands around my neck and chokes me for the first time."  T. at 27-28.  He used both hands and applied his weight and she went unconscious for maybe three minutes; when she awoke, she was on the floor.  T. at 29.  She told him she had to go to the bathroom, but he made her pee in a cup.  T. at 31.  Travick himself peed in a glass and he then made the victim drink it and her own.  *Id.*  He told her if she puked, he would put her face in it.  T. at 32.  She went into the bathroom and Travick followed her in; he grabbed her neck again, choked her, and pushed her head against the wall until she went unconscious again.  T. at 35.  The victim eventually made it to the kitchen and started crying.  T. at 37.

Travick stated "[a]ll right, bitch, I'll give you something to cry about" and proceeded to strike her with a broomstick. *Id.* He struck her six or seven times on her arm, her side, and her legs. T. at 37-38. At times during the ordeal, the victim retrieved a hidden cellphone from her leg brace and contacted friends for help and eventually the police. T. at 36, 39-40, 74. She identified the marks and scratches on her neck in photographs; the photographs were taken some thirty minutes after the police had arrived. T. at 44-46, 57; State's Exhibits 1-5. She testified after the incident, her voice was hoarse and it hurt to eat and swallow; those symptoms lasted for a couple weeks. T. at 49-50. She refused to go to the hospital because she was "hard-headed." T. at 50. The victim explained she reached out to Travick after the incident because she was sad and depressed and "I'd rather be getting abused than be alone. That's to the point I was at." T. at 50-51, 94-95.

{¶ 16} On cross-examination, the victim admitted that when she spoke to the responding officer, she was not in a wheelchair or on crutches. T. at 54-56. She explained she used a wheelchair in her apartment because her foot would swell and she could not walk on it. T. at 55. She agreed although Travick used both hands around her neck, the photographs depicted marks on only one side of her neck. T. at 56.

{¶ 17} Police Officer Zachary Smith responded to the scene. He testified upon meeting the victim, she was "very upset" and "actually having trouble speaking." T. at 102. He noticed she was "wincing in pain multiple times around her abdomen" during their interaction. T. at 115. Officer Smith attempted to calm her down and observed red marks on the left side of her neck. T. at 102, 119; State's Exhibit 7. He did not observe any major marks on the right side of the victim's neck, but she complained "about pain on the right side as well." T. at 119. He noted they were not in a well-lit area during their interaction. T. at 129.

The victim told Officer Smith what had occurred while awaiting backup to arrive to locate Travick. T. at 102-105, 107. Once the victim followed up at the police station, Officer Smith received "more in-depth information on the incident." T. at 107, 130. She described "the assaults and then everything else . . . up until she called the police." T. at 108. After Travick was apprehended, he admitted to the urine incident, but claimed "that was her choice and that she wanted to do so." T. at 113. Officer Smith charged Travick with felonious assault and domestic violence based on the fact that the two were live-in boyfriend and girlfriend and based on the victim's allegations that he had struck her with a broomstick and her wincing in pain. He also charged Travick with strangulation based on the victim's allegations and the multiple marks on her neck and her difficulty in speaking. T. at 113, 115-116.

{¶ 18} Travick testified the victim was agitated because she was facing eviction and blamed him for turning her in for stealing the neighbor's package. T. at 178. The two verbally argued and then he went to sleep until he heard knocking at the door. T. at 181-182. After Travick realized police were at the door, he got dressed and exited the apartment via the window. T. at 200. He was aware of the broomstick, but claimed to have never touched it that night. T. at 183-184. He denied any physical involvement with the victim and explained the victim "pissed in the cup and drunk that pee." T. at 184-185. He admitted when he was released from jail with an ankle monitor, there was a no contact order in place with the victim, but he did not have anywhere else to go. T. at 187, 192. He denied placing the scratches and marks on the victim's neck. T. at 191.

{¶ 19} The parties stipulated to Travick's two prior convictions for domestic violence. T. at 157.

{¶ 20} At the conclusion of the bench trial, the trial court found Travick guilty of strangulation and domestic violence. Travick now argues the State failed to prove there was a substantial risk of serious physical harm by means of strangulation and that he knowingly caused or attempted to cause physical harm to the victim to establish domestic violence. Travick further argues the victim's testimony was not credible. We disagree with Travick's argument.

{¶ 21} As noted above, the credibility of the witnesses are issues for the trier of fact. *Jamison,* 49 Ohio St.3d 182. As the trier of fact, the trial court had before it two versions of the incident: the victim's who provided great detail and Travick's who denied everything because he was sleeping. Officer Smith's testimony of the emotional state of the victim, her difficulty in speaking, the scratches and marks on her neck, and her wincing in pain, corroborated her account if believed by the trier of fact.

{¶ 22} After viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of strangulation and domestic violence were proven beyond a reasonable doubt.

{¶ 23} Upon review, we find sufficient evidence, if believed, to support Travick's convictions for strangulation and domestic violence; we do not find that the trial court clearly lost its way nor do we find any manifest miscarriage of justice.

{¶ 24} Assignments of Error I and II are denied.

{¶ 25} For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is AFFIRMED.

{¶ 26} Costs to Appellant.

By: King, P.J.

Montgomery, J. and

Popham, J. concur.